UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NANCY "SUE" IMBRO,<br><br>Plaintiff,<br><br>v.<br><br>FOREST RIVER, INC., and<br>MAPLETREE TRANSPORTATION, INC.<br><br>Defendants. | CASE NO. 3:20-CV-925-JD-MGG |

**OPINION AND ORDER**

This case arises in response to a dispute between Plaintiff Nancy "Sue" Imbro ("Imbro") and her former employer, Defendant Mapletree Transportation, Inc. ("Mapletree"), and its parent company, Defendant Forest River, Inc. ("Forest River"). Imbro was formerly the General Manager ("GM") at Mapletree. During that time, she reported directly to Pete Liegl ("Liegl"), who serves concurrently as the CEO and President of both Mapletree and Forest River. Imbro worked as GM for more than four years before being removed from the position. She was never reassigned to a new position and now alleges she was constructively discharged.

Imbro alleges her discharge from Mapletree was an act of both sex and age discrimination in violation of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII")[1], as amended, and the Age Discrimination in Employment Act of 1967

---

[1] Codified at 42 U.S.C. § 2000 *et seq.*

("ADEA")[2]. Additionally, she alleges that while employed at Mapletree she was given an inferior wage and bonuses to comparable male employees at both corporations in violation of the Equal Pay Act[3]. Mapletree, however, states they removed Imbro for failure to meet the expectations of the position.

Discovery in this case has been ongoing since the adoption of the parties' discovery plan on February 11, 2021. The only discovery that remains are the depositions of Liegl; Forest River's Corporate Controller, Mr. Leyes; and Forest River's former Human Resources Director, Mr. Rowe. However, these depositions will not occur until after the Court has resolved the Motion to Compel filed by Imbro on October 29, 2021, which is pending and ripe before the Court. Related to the instant Motion to Compel are the parties' motions to seal, which are also ripe before the Court: Plaintiff's Motions to Seal her brief in support of Motion to Compel and various documents [DE 39, DE 41], and Defendants' Motion to Seal the same documents. [DE 48]. As the outcome of Plaintiff's Motion to Compel impacts the scope of the three remaining depositions, the Court also vacated the discovery deadline until the instant motions were decided.

For the reasons discussed below, the parties' motions to seal are granted, and Imbro's Motion to Compel is granted in part and denied in part.

---

[2] Codified at 29 U.S.C. § 621 *et seq.*
[3] Codified at 29 U.S.C. § 201 *et seq.*

**I.      Relevant Background**

Mapletree and Forest River have a close relationship. Forest River is a recreational vehicle ("RV") manufacturer. Mapletree is an RV transportation company and is a wholly-owned subsidiary of Forest River, and the two companies share Liegl as CEO and President. Mapletree's offices are in the same complex as some of Forest River's divisions. While Mapletree consists of 30 full-time employees and 350 contractors, Forest River employs tens of thousands of people. Mapletree's employees are overseen by a single GM—the position previously held by Imbro—who directly reports to Liegl. Forest River employs thirty-one GMs, who report to eight Group GMs. These eight Group GMs then directly report to Liegl.

When hiring and onboarding employees, Mapletree works with Forest River's human resources and provides Forest River's code of ethics and employee handbook to newly-hired employees. Moreover, Mapletree only transports RVs on behalf of Forest River. Additionally, both Imbro's immediate predecessor and successor as GM worked concurrently as managers at Forest River. Through this business relationship, Mapletree also pays Forest River a monthly administrative fee.

Imbro worked at Mapletree as GM from October 2017 to February 2020. Imbro was offered the position of Mapletree GM prior to that, but she turned it down. At that time, Mapletree oversaw a subsidiary company, Shipshe Trailers, that performed welding and fabricating services. Imbro did not have a manufacturing background and did not feel she was knowledgeable enough to supervise. After Mapletree no longer oversaw Shipshe Trailers, Imbro was willing to accept the role.

3

In her capacity as GM at Mapletree, Imbro oversaw its approximately 30 employees and 350 contractors. While GM, Imbro was directly supervised by Liegl. Any actions she took in promoting or hiring employees had to be approved by Liegl. As her supervisor, Liegl would also conduct Imbro's performance reviews. Accordingly, Liegl spoke with Imbro about her performance on one occasion in 2019. In doing so, he compared the financial performance of Mapletree with the performance of divisions of Forest River. Several months after this 2019 performance review with Liegl, Imbro was removed as GM. She was replaced by Damon Gleim shortly thereafter. At the time of her removal, Imbro was 55 years old. During discovery, Defendants reported that Gleim is 46 years old but did not specify his birthdate.

Following her discharge, Imbro filed the instant action. Per the proposed discovery plan that was adopted, Imbro propounded her First Set of Interrogatories and First Request for Production of Documents (First "RFPs") on March 19, 2021. In these RFPs, Imbro sought information regarding her own personnel file, internal or administrative complaints of discrimination in other employees' files, and the disciplinary and compensation info of Forest River's GMs. The Defendants served their responses on June 4, 2021, pursuant to the parties' agreed extensions of time. The parties disputed both the content of the responses and the scope of the inquiries. The parties conferred, and Imbro agreed to tailor her interrogatories more narrowly. Despite the adjustments, the parties failed to come to a full agreement on the First RFPs.

On October 29, 2021, Defendants served their second supplemental initial disclosures and supplemental interrogatory answers. While these answered some of

4

Imbro's questions regarding her replacement, Gleim, his date of birth was absent. Additionally, although Forest River provided the names, duties, supervisors, and length of service of its own GMs, it did not include compensation information. Other information which was absent included: 1) information relating to potential witnesses and Imbro's replacement, 2) information and documents relating to complaints of sex or age discrimination made by employees against Defendants, 3) information and personnel documents for potential comparators, and 4) information and documents regarding the compensation of Defendant's GMs.

Although the parties met and conferred before the Defendants served their supplemental disclosures and responses, Imbro does not cite any further meetings regarding the instant dispute in her L.R. 37-1 Certification.[4] Despite this, Imbro still contends the parties are at an impasse and moves the court to compel the production of: 1) employment and contact information for potential witnesses, 2) information regarding any employees who have filed any administrative or judicial complaints based on sex or age discrimination, or for a violation of the Equal Pay Act, between January 1, 2016, and December 31, 2020, 3) personnel files for Forest River GMs who were disciplined for performance issues between January 1, 2016, and December 31,

---

[4] A party filing a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Under this Court's Local Rules, such certification must be filed separately and include specific information including "the date, time, and place of any conference or attempted conference; and the names of the parties participating in the conference." N.D. Ind. L.R. 37-1(a)(1)–(2). "The court may deny any [discovery-related] motion . . . if the required certification is not filed." N.D. Ind. L.R. 37-1(b).

2020, 4) and compensation of Forest River GMs, including incentive pay, and documentation of their pay for 2019 and 2020.

## II. Analysis

### A. Motions to Seal

On April 9, 2021, the Court entered the parties' stipulated protective order, which provided that the party who designates material as either "confidential" or "attorneys' eyes only" bears the burden of petitioning the Court to maintain such protected material under seal. [DE 32 at 8]. As Plaintiff's Brief in Support of her instant Motion to Compel includes a transcript of Plaintiff's deposition as well as written discovery responses, portions of which Defendants had designated as confidential, Plaintiff's instant motion includes two motions to seal so that Defendants may file their own motion in accordance with the procedure laid out in the parties' protective order.

Defendants filed their response to the Motion to Compel on November 30, 2021. As part of their response, Defendants filed an accompanying Motion to Seal demonstrating good cause to seal the portions of Plaintiff's Brief in Support of her Motion to Compel as well as attached the attached exhibits containing Plaintiff's deposition transcript and certain written discovery responses from Defendants. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). Defendants' motion also included proposed redacted versions of these documents. [DE 48-3 through DE 48-7]. Defendants also ask that an additional exhibit containing Mapletree's Objections and Answers to Plaintiff's First Set of Interrogatories [DE 38-3] be sealed. Defendant provides a proposed redacted version of this document as well.

Imbro did not file any additional response to Defendant's motion and proposed redactions despite being afforded time to do so as required under N.D. Ind. L.R. 7-1(d)(2)(A). Accordingly, the Court assumes that Defendant's motion is unopposed such that the court may rule summarily under N.D. Ind. L.R. 7-1(d)(4). Accordingly, with good cause shown and without objection from Plaintiff, the parties' motions to seal are **GRANTED**. [DE 39, DE 41, and DE 48]. The Clerk is **DIRECTED** to maintain Plaintiff's Sealed Motion [DE 39] and Plaintiff's Amended Sealed Motion [DE 41] under **SEAL**. Moreover, the Clerk is **DIRECTED** to **SEAL** Mapletree's Objections and Answers to Plaintiff's Interrogatories [DE 38-3].

Defendants are **DIRECTED** to separately file the redacted versions of Plaintiff's Brief in Support of her Motion to Compel [DE 48-3], Plaintiff's Deposition Transcript [DE 48-4], Forest River's Supplemental Objections and Answers [DE 48-5], Mapletree's Supplemental Objections and Answers [DE 48-6], and Mapletree's objections and answers to Plaintiff's Interrogatories [DE 48-7].

### B.     Motion to Compel

Information is discoverable if it is nonprivileged, relevant to any claim or defense in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "For discovery purposes, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (quoting *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind.2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Even when

information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Id.* (citing *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003)). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

When a responding party withholds discoverable information responsive to a party's discovery requests, a motion to compel discovery is allowed. Fed. R. Civ. P. 37(a)(3)–(4). After all, "[a] responding party cannot unilaterally impose conditions upon its compliance with a discovery request." *Gray v. Faulkner*, 148 F.R.D. 220, 222 (N.D. Ind. 1992). Rather, the responding party carries the burden "to show why a particular discovery request is improper" and must do so with specificity. *Hills v. AT&T Mobility Servs., LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, *4 (N.D. Ind. July 22, 2021) (quoting *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006)). Yet, when the discovery request is overly broad or relevancy is not apparent, the requesting party must establish relevancy. *Vajner v. City of Lake Station, Indiana*, No. 2:09-CV-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010).

This Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines*, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996). As such, the court "independently determine[s] the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

### 1. Information Regarding Potential Witnesses

Imbro's instant Motion to Compel first seeks an order compelling Defendants to provide job titles, dates of employment, and last known telephone numbers for three Forest River employees and the date of birth for her replacement, Damon Gleim. Through their response, Defendants have stated that they have no objection to supplementing their responses with this information. Accordingly, this issue is moot.

### 2. Information Regarding Complaints Against Defendants

Next, Imbro's instant motion seeks an order compelling Defendants to produce documents and information on employees at Mapletree and Forest River who filed internal complaints and administrative charges or complaints against Defendants alleging age or sex discrimination or Equal Pay Act violations between January 1, 2016, and December 31, 2020.

Imbro argues this information is relevant to whether Liegl's proffered reason for her removal was merely pretextual. Defendants, however, explain that they previously informed Imbro that no such complaints identifying Liegl had been filed. In response, Imbro contends that Liegl was the ultimate decisionmaker at both companies—and since all promotions and hires were submitted to him for approval, it follows that any complaints filed by employees under the supervisory chain of Liegl, or for whom Liegl participated in disciplinary decisions, are also relevant to Liegl's biases and the issue of pretext. Defendants do not directly dispute this characterization but argue that responding to the full scope of Imbro's request would be unduly burdensome and would also produce largely irrelevant information. They contend that the categories of

information she requests are vague and overbroad and that responding would require searching through thousands of employees' files.

In discrimination cases, evidence of a defendant's prior acts of discrimination can be relevant to establishing pretext. *Tomanovich v. Glen*, No. IP 01-1247 C Y/K, 2002 WL 1858795, at *5 (S.D. Ind. Aug. 13, 2002). Accordingly, prior complaints and allegations by other employees of such discrimination can be discovered where they would be relevant to the specific claims that the plaintiff makes, such as past allegations of race discrimination by employees in a case making the same claim. *Cain v. Elgin, Joliet & E. Ry.*, No. 2:04-CV-347-RL, 2005 WL 8170023, *10 (N.D. Ind. Sept. 2, 2005). The temporal scope of discovery on any prior complaints need to also be within a reasonable time period such that they are calculated to lead to the discovery of admissible evidence. *Sanchez v. City of Fort Wayne*, No. 118CV00397HABSLC, 2019 WL 6696295, *3 (N.D. Ind. Dec. 9, 2019). Often, a five-year period is considered reasonable in this circuit. *Id.* (citing *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 622 (S.D. Ind. 2002); *Leibforth v. Belvidere Nat'l Bank*, No. 99 C 50381, 2001 WL 649596, *2 (N.D. Ill. 2001)). Even where limited in time and type of discrimination alleged, though, courts often will limit the scope of discovery to the department at issue, as generally only the motives of the supervisors whose actions affected the plaintiff are considered relevant. *Blakely v. Big Lots Stores, Inc.*, No. 2:10 CV 342, 2012 WL 1856581, *2 (N.D. Ind. May 21, 2012) (citing *Chavez* 206 F.R.D. at 620; *Owens v. Sprint/United Management Co.*, 221 F.R.D. 649, 653–655 (D.Kan.2004)).

Here, Imbro appropriately tailors her request for third-party complaints to those alleging the same type of discrimination she claims and within the typical five-year timeframe. However, as Imbro's request seeks information about employees at Forest River, it seeks information not only beyond her department but also beyond Mapletree. Courts in this circuit have addressed similar types of requests. For instance, in *Chavez*, an employee received a series of disciplinary actions from his supervisor. The employee was a salaried, non-bargaining unit employee, and his work was only performed at a single plant. Due to certain treatment the plaintiff faced, he filed suit contending age discrimination, hostile work environment, and retaliation for filing a discrimination charge with the Equal Employment Opportunity Commission. As a part of discovery, the employee requested "all previous lawsuits, grievances or complaints" alleging age discrimination against the defendant in the past five years in his department and in two other departments. 206 F.R.D. at 622. Although his request was limited in time and type of discrimination alleged, it was not limited to his department, nor to similar salaried, non-bargaining unit employees under the auspices of the same supervisor. Accordingly, finding that plaintiff failed to show a particularized need, the court in *Chavez* found the request overbroad and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* However, the court did permit discovery to the extent that the information related to similarly designated employees under the same supervisor. *Id.*

Like the requests at issue in *Chavez*, Imbro does not limit her requests to employees in her same department. However, because Liegl is the CEO of both Forest River and Mapletree, her requests do seek information from Forest Employees who are

11

under the direction of the same supervisor. Imbro argues that her need for expanded discovery is warranted because her direct supervisor, Liegl, managed her hiring and promotion decisions when she was GM, and thus likely did that for Forest River's GMs. As such, complainants may not have referenced him, but he was nonetheless the ultimate decisionmaker regarding the complaints and is thereby implicated.

Even if Liegl was highly involved with Imbro's decisions as her direct supervisor, though, Liegl only directly supervises Forest River's eight Group GMs who in turn supervise the thirty-one GMs. [DE 41-3 at 8; 11-18]. Without more, it is merely speculation that because Liegl was involved in the employment decisions of Imbro as his direct supervisee that he was also similarly involved in directing the practices of the thirty-one GMs whom he did not directly supervise, much less the thousands of employees that they oversee. Without more, Imbro's request is overbroad and likely to produce largely irrelevant information.

However, because Liegl does directly supervise the eight Group GMs at Forest River as he did with Imbro at Mapletree, discovery on any internal complaints and administrative charges or complaints that reference employees in these positions and allege age or sex discrimination or Equal Pay Act violations between January 1, 2016, and December 31, 2020, is warranted. As Imbro is the only GM at Mapletree, and her immediate supervisor is also the CEO of Forest River, she has demonstrated a need for going outside of her immediate department. Moreover, like *Chavez*, her allegations are directed against one supervisor, CEO Liegl. Thus, limiting the scope of Imbro's request to Forest River's Group GMs who also directly report to Liegl is far more likely to lead

to relevant information, is less burdensome, and addresses the need Imbro particularized.

### d. Information Regarding Comparators

Finally, Imbro's motion seeks an order compelling Defendants to produce personnel files of any of the thirty-one Forest River GMs who were disciplined for performance issues between January 1, 2016, and December 31, 2020. Imbro argues these GMs are similarly situated to her and that this information is relevant to proving disparate treatment, or pretext, helpful for establishing her *prima facie* case of discrimination under Title VII and the ADEA. Additionally, she argues she is entitled to a broader scope of discovery from Forest River because it was her joint employer. Defendants contend that the personnel files of its GMs are irrelevant because they are not similarly situated to Imbro. Also, they further contend that Forest River is not her joint employer, but even if Forest River were, this does not make its GMs any more similarly situated to her.

In workplace discrimination and disparate treatment claims, the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is the standard of evaluation. Under this framework, the plaintiff has the initial burden of establishing that "(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the

employer." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (internal quotations and citations omitted).

Here, Defendants contend that the Forest River GMs are not similarly situated to Imbro. Whether employees are similarly situated is a "flexible, common-sense, and factual inquiry" *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). The relevant factors of this inquiry include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision. *Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2008) (internal citations and quotations omitted). While the employees need not be clones, *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010), it is necessary that they be directly comparable in all material aspects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Here, based on the applicable framework, Imbro's discovery request is overbroad. As presently drafted, her request is likely to capture irrelevant GMs that are within her protected class, have different job duties, work in another department, have different experience and qualifications, and vary in other factors relevant to establishing a proper comparator. *See Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004, 1016 (N.D. Ill. 2009), objections overruled, No. 06 C 3132, 2010 WL 780390 (N.D. Ill. Mar. 3, 2010) (finding discovery request in a Title VII case overbroad as it was not tailored to account for employee's job, rank, duty station, disciplinary history, supervisor, or other factor[s]). This deficiency is not for lack of information either, as Forest River provided

Imbro with the names, job duties, and length of employment for its GMs. [DE 39-3 ¶ 15]. Accordingly, Imbro could and should have limited her request to GMs that were male, involved in transportation, and otherwise sufficiently related to her so that they could potentially serve as a proper comparator. Casting a corporate-wide net on a parent company solely based on the shared title of GM is insufficient to meet the burden of relevancy.

Furthermore, unlike Imbro, Forest River's thirty-one GMs did not directly report to Liegl and instead reported to one of Forest River's eight Group GMs. Even if Liegl did directly supervise the Forest River GMs, or was the ultimate decisionmaker as Imbro contends, her request is still marred by these other deficiencies. *See Coleman v. Donahoe*, 667 F.3d 835, 848 (7th Cir. 2012) (clarifying that the real question is not whether comparators dealt with the same supervisor, but whether they were treated more favorably by the same decisionmaker). Additionally, these ailments would not be cured by finding Forest River as Imbro's joint employer, as that has no bearing on these defects. Accordingly, Imbro's request is not narrowly tailored to find relevant information and thus her motion to compel is denied. [DE 41].

    e.    **Compensation Information**

Finally, Imbro also seeks compensation information for Forest River GMs which she contends is relevant to her claims under the Equal Pay Act. To establish her *prima facie* case under the Act, Imbro must show "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions."

*Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003) (quoting *Stopka v. Alliance of Am. Insurers,* 141 F.3d 681, 685 (7th Cir.1998)). The key inquiry in determining whether two jobs are equal is whether they have a "common core" of tasks, or simply put, whether "a significant portion of the two jobs is identical." *Id.* Accordingly, the determination of whether two jobs are substantially equal hinges on "actual job performance and content – not job titles, classifications or descriptions." *Stopka*, 141 F. 3d at 686 n. 5 (quoting *EEOC v. Mercy Hosp. & Medical Ctr.*, 709 F.2d 1195, 1197 (7th Cir.1983)).

As with the comparator information sought above, Imbro's request for compensation information is overbroad. Imbro's core tasks revolved around transportation. Moreover, in managing Mapletree, she oversaw only thirty full-time employees. Despite this, her request for compensation information makes no attempt to find relevant comparators who similarly focused on transportation, rather than the manufacturing that most Forest River employees are involved in. Likewise, she does not tailor her request to GMs responsible for a similar number of employees, especially as the range each GM supervises ranges from forty-three to sixteen hundred. Accordingly, Imbro has not met her burden of demonstrating relevancy with this overbroad request. [DE 41].

### III. CONCLUSION

For the reasons discussed above, the Court:

- **GRANTS** Plaintiff's Motions to Seal [DE 39, DE 41] and Defendants' Motion to Seal [DE 48], and accordingly, **DIRECTS** the Clerk to maintain Plaintiff's Sealed

Motion [DE 39] and Amended Sealed Motion [DE 41] under **SEAL**. The Clerk is further **DIRECTED** to **SEAL** Mapletree's Objections and Answers to Plaintiff's Interrogatories [DE 38-3].

- **DIRECTS** Defendants to separately file the redacted versions of Plaintiff's Brief in Support of her Motion to Compel [DE 48-3], Plaintiff's Deposition Transcript [DE 48-4], Forest River's Supplemental Objections and Answers [DE 48-5], Mapletree's Supplemental Objections and Answers [DE 48-6], and Mapletree's objections and answers to Plaintiff's Interrogatories [DE 48-7].

- **GRANTS IN PART** Imbro's Motion to Compel as to information regarding complaints against Defendants, limiting this request to reference only Group GMs between January 1, 2016, and December 31, 2020. [DE 37].

- **DENIES** Imbro's Motion to Compel as to comparator information. [DE 37].

- **DENIES** Imbro's Motion to Compel as to compensation information. [DE 37].

- **RESETS** the deadline to complete discovery to **September 23, 2022.**

**SO ORDERED** this 22nd day of July 2022.

                                                    s/Michael G. Gotsch, Sr.
                                                    Michael G. Gotsch, Sr.
                                                    United States Magistrate Judge